# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| OMNIPLEX WORLD SERVICES, CORPORATION, | : : : |
| Plaintiff, | : : |
| v. | : Civil Action No. : 5:10-CV-00034 (CAR) : |
| ALPHA PROTECTIVE SERVICES, INC., | : : |
| Defendant. | : : : : : |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Currently before the Court is a Motion for Summary Judgment filed by Plaintiff OMNIPLEX World Services Corporation (herein "OMNIPLEX"). Through this motion, OMNIPLEX seeks to have the Court rule that Defendant Alpha Protective Services, Inc., (herein "APS") breached the contract between them by failing to pay amounts due. Defendant APS filed a timely response to the motion, and OMNIPLEX thereafter filed a timely reply. Having considered these briefs, the relevant law, and the evidence provided, this Court finds that OMNIPLEX's prior material breach of the contract did *not* relieve APS from its duty to pay the invoices for services that were provided. The Court further finds that the arbitration clause included in the contract is not a bar to the grant of summary judgment in favor of OMNIPLEX. OMNIPLEX's Motion for Summary Judgment is thus **GRANTED**.

## SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex

Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir.1996). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323.

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed.R.Civ.P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.1991). Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

# UNDISPUTED MATERIAL FACTS

This case arises out of a breach of contract. In July 2008, Defendant APS was under contract with the United States Army to provide armed security guard services at Ft. Bragg in Fayetteville, N.C. (herein "the Prime Contract"). To fulfill this obligation, APS entered into a Subcontract (herein "the Subcontract") with OMNIPLEX to staff the positions. The Subcontract provided that OMNIPLEX was to invoice APS on a monthly basis for the services OMNIPLEX furnished APS. APS would then submit requests for payment to the Army and was required to pay OMNIPLEX within three days of receiving payment from the Army or within forty-five days of APS's receipt of OMNIPLEX's invoice - whichever occurred first.

In exchange, OMNIPLEX agreed to perform services under the Prime Contract, which requires APS personnel (and in turn OMNIPLEX personnel) to maintain a "top secret security clearance." OMNIPLEX further promised to notify APS of any and all changes to personnel status. This provision of the contract was material because, under the Subcontract, APS and OMNPLEX agreed to exchange and utilize each other's personnel. OMNIPLEX personnel would need to maintain top secret security clearances to work on an APS site. The provision was also important because the Collective Bargaining Agreement between APS, OMNIPLEX, and the employees' union allows bidding on posted job openings. Many of the posted job openings required a top secret clearance, and the failure to maintain a top secret clearance limited the available job openings to APS and OMNIPLEX personnel. Thus, a reduction in security clearances would potentially minimize the personnel available and increase the risk that APS would not fulfill staffing requirements and fail to perform under the Prime Contract.

This arrangement between APS and OMNIPLEX appeared to work for a few months until APS

attempted to utilize OMNIPLEX personnel at an APS site and discovered that OMNIPLEX had reduced the security clearances of its personnel from "top secret" to "secret" without notification. Because the OMNIPLEX personnel did not possess the top secret security clearances, APS could not utilize them to fill those positions and was not able to fulfill its contractual obligations under the Prime Contract.

After this discovery, APS and OMNIPLEX executed an Amendment to the Subcontract, effective January 1, 2009, in which OMNIPLEX specifically promised that OMNIPLEX security officers "will maintain or be in the process for obtaining" no less than a "top secret" security clearance for the duration of the Subcontract agreement. However, just a few months later, APS discovered that twelve OMNIPLEX officers did not maintain (nor were they in the process for obtaining) a top secret security clearance.

Thus, on July 10, 2009, APS sent a letter to OMNIPLEX stating that OMNIPLEX had thirty days to "cure this material breach" of the Subcontract by obtaining top secret security clearances for those personnel. OMNIPLEX responded by letter in which it essentially acknowledged its breach and promised that action was being taken to "fulfill the terms of the OMNIPLEX/APS subcontract agreement." On July 31, 2009, OMNIPLEX sent APS an invoice for $293,893.00 for the services that were provided that month. APS, however, ceased all payments of OMNIPLEX invoices. Over the next six months, OMNIPLEX continued to furnish guards and to invoice APS in the ordinary course; but OMNIPLEX also continued to fail to maintain top secret clearances for its personnel. APS finally notified OMNIPLEX, on January 6, 2010, that it was terminating the Subcontract due to OMNIPLEX's failure to maintain top secret security clearances for its personnel. The contract between OMNIPLEX and APS was officially terminated on January 14, 2010. APS did not pay OMNIPLEX for services provided in July, August, September, October, November and December of 2009 and January 2010. The amounts invoiced for these months total $1,883,221.32.

The Subcontract contains a specific provision allowing for arbitration of any claim arising out of or relating to the Subcontract or an alleged breach thereof. The arbitration clause states:

> Upon the agreement of the parties, and to avoid the cost of litigation, any controversy or claim arising out of or relating to this Subcontract, or the breach thereof, may be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Nonetheless, just days after the Subcontracted was terminated, OMNIPLEX filed the present suit to recover the amounts invoiced and not paid by APS.

## DISCUSSION

Through the present suit, OMNIPLEX states claims for breach of contract, fraud, and quantum meruit, and on summary judgment, OMNIPLEX asserts that it is entitled to judgment as a matter of law on the breach of contract claim because it is undisputed that APS failed to pay the invoices for services provided as required by the clear terms of the Subcontract. In Georgia, "[a] contract is an agreement between two or more parties for the doing or not doing of some specified thing." O.C.G.A. § 13-1-1. "A contract is breached by a party to it who is bound by its provisions to perform some act toward its consummation and who, without legal excuse on his part . . . , declines to do so." CCE Federal Credit Union v. Chesser, 150 Ga. App. 328, 330, 258 S.E.2d 2 (1979) (quoting Douglas v. McNabb Realty Co., 78 Ga. App. 845, 846, 52 S.E.2d 550, 552 (1949)).

Here, there is no dispute that APS was obligated, under the Subcontract, to pay monthly invoices submitted by OMNIPLEX for services provided. There is also no dispute that APS has not paid the invoices submitted for the months of July, August, September, October, November and December of 2009 and January 2010. The issue at bar, therefore, is whether APS has "legal excuse" not to pay the invoices. APS asserts that it is not bound to pay the amounts claimed by OMNIPLEX

because OMNIPLEX materially breached the Subcontract by failing to maintain the proper security clearances for all of its personnel. However, APS does not dispute that OMNIPLEX did in fact staff security positions under the Subcontract during the months of July, August, September, October, November and December of 2009 and January 2010 as reflected in the unpaid invoices.

Under Georgia law, "[a] contract may be absolute or conditional. In an absolute contract, every covenant is independent and the breach of one does not relieve the obligation of another. In a conditional contract, the covenants are dependent upon each other and the breach of one is a release of the binding force of all dependent covenants." O.C.G.A. § 13-1-7. Georgia cases illustrate the distinction between the two. See e.g., Beaulieu Group, LLC v. S&S Mills, Inc., 292 Ga. App. 455, 664 S.E.2d 816 (2008) (relying on Complete Trucklease v. Auto Rental & Leasing, 160 Ga.App. 568, 288 S.E.2d 75 (1981)); see also, Trustees of Independent Presbyterian Church of Savannah v. Savannah Kidswear, Inc., 215 Ga. App. 863, 452 S.E.2d 546 (1994). The Georgia Court of Appeals' review of Complete Trucklease v. Auto Rental & Leasing, supra, is particularly helpful in the present case:

> The contract in Complete Trucklease was a lease of trucks along with an agreement by the lessor to service and maintain them. When sued for nonpayment of amounts owing under the lease, the lessees claimed that the lessor's breach of the service agreement excused their nonperformance. Complete Trucklease recognized that
>
>> [t]he general rule is that mutual covenants must go to the whole consideration on both sides, where the one is precedent to the other; but when they go to a part only and a breach may be paid for in damages, the covenants are independent [in which case] the defendant has a remedy on his covenant[ ] and shall not plead it as a condition precedent . . . .
>
> Although there was evidence in Complete Trucklease that there were leased trucks which the lessor had failed to service and maintain, it was undisputed that there were also trucks which the lessees received and used for a period of time. Under these circumstances, this court held that the lessor's breach of its covenant to maintain and repair the trucks would not go to the whole consideration of the agreement, that it could not be asserted by the lessees as the breach of a dependent covenant which entirely excused their performance under the contract, and that the lessees' remedy was to assert

6

a claim for damages at the proper time and in the proper manner, or to resist payment of the balance of the indebtedness in money, in case of suit therefor.

Beaulieu Group, 292 Ga. App. at 457-58 (internal cites and quotations omitted).

The Subcontract in this case is also absolute, not conditional. Similar to the agreement at issue in Complete Trucklease where the lessor was required to provide and maintain trucks, the Subcontract here required that OMNIPLEX provide guards and maintain top secret security clearances for all of its personnel. And, like in Complete Trucklease, where the lessor failed in maintaining some trucks but still provided other trucks for the lessee's use, there is undisputed evidence here OMNIPLEX failed to maintain a top secret security clearance for some of its personnel but still provided other guards which APS could and did use for the last six months of the contract. Thus, OMNIPLEX's breach of its duty to maintain top secret security clearances for all of its personnel does "not go to the whole consideration of the agreement." Inasmuch, OMNIPLEX's breach was not a breach of "a dependent covenant" which would entirely excuse APS's duty to perform. In other words, OMNIPLEX's material breach of the Subcontract did *not* relieve APS from its duty to pay the invoices for services that were provided. APS is still required to pay the invoices for services that were provided during the months of July, August, September, October, November and December of 2009 and January 2010.

Of course, this does not mean that APS is without remedy for OMNIPLEX's breach of the Subcontract. APS's remedy is to assert a claim for damages at the proper time and in the proper manner, or to resist payment of the balance of the indebtedness in money, in case of suit therefor. APS appears to be doing this in its Amended Counterclaim.

In its Response in Opposition to the Motion for Summary Judgment, APS also asserts that summary judgment cannot be granted in favor of OMNIPLEX because the arbitration clause in the Subcontract requires that OMNIPLEX dismiss its claims and pursue the same through arbitration. The

Subcontract provides:

> *Upon the agreement of the parties*, and to avoid the cost of litigation, any controversy or claim arising out of or relating to this Subcontract, or the breach thereof, *may* be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

Ex.1 to OMNIPLEX's Complaint, at ¶ 19 (emphasis added). The plain, unambiguous language of this clause is permissive. Arbitration is not mandatory under the Subcontract. It merely suggests that, upon mutual agreement, the parties may voluntarily elect to submit to arbitration of any dispute. This Court's reading of the clause is supported the provision immediately preceding the arbitration clause, which states that "[a]ny litigation . . . shall be brought in a court of competent jurisdiction in the State of Georgia." Id. at ¶ 18. The choice of litigation in lieu of arbitration was thus clearly contemplated and provided for by the parties.

Permissive, precatory language in an arbitration clause, as is included in the Subcontract, is insufficient to compel any party to arbitrate its claims. See Laird v. Risbergs, 266 Ga. App. 107, 108, 596 S.E.2d 412 (2004) (holding that when the only mention of arbitration in the agreement refers to the voluntary arbitration under the Georgia Arbitration Code, arbitration cannot be compelled). "A federal court only may compel arbitration of an issue if the terms of a private agreement *require* the parties to arbitrate that issue." Goldberg v. Bear, Stearns & Co., Inc., 912 F.2d 1418, 1419 (11th Cir. 1990) (emphasis added). The arbitration clause in the Subcontract, therefore, does not bar the grant summary judgment in favor of OMNIPLEX. OMNIPLEX's Motion for Summary Judgment is thus **GRANTED**.

**SO ORDERED** this 22nd day of September, 2010

                                          S/ C. Ashley Royal
                                          C. ASHLEY ROYAL, JUDGE
                                          UNITED STATES DISTRICT COURT

jlr